UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOBARDO ERIC RAMOS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MAYFIELD, et al.,<br><br>　　　　Defendants. | Case No. 1:21-cv-01036-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST DEFENDANT MAYFIELD AND DEFENDANT DOE, AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>(ECF No. 10)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

　　　Leobardo Ramos ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on July 1, 2021. (ECF No. 1). On August 16, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 9). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint." (Id. at 9).

　　　On August 30, 2021, Plaintiff filed his First Amended Complaint. (ECF No. 10). The

Court has reviewed the First Amended Complaint, and for the reasons described below, will recommend that this action proceed on Plaintiff's Eighth Amendment excessive force claim against defendant Mayfield and defendant Doe.[1]  The Court will also recommend that all other claims be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting

---

[1] Plaintiff is advised that defendant Doe cannot be served until Plaintiff has identified him or her and filed a motion to substitute or amended his complaint to substitute the named defendant in place of defendant Doe. For service to be successful, the Court and/or the United States Marshal must be able to identify and locate the defendant to be served. Plaintiff will be required to identify defendant Doe as the litigation proceeds. The Court notes that, once discovery opens, Plaintiff will be given the opportunity to seek information to identify defendant Doe.

this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

At times Plaintiff's complaint is difficult to understand. What follows is the Court's best understanding of Plaintiff's allegations.

On March 6, 2019, the second watch officer in Orientation Building 8 approached Plaintiff's cell to escort Plaintiff for his suicide observation (the entire purpose of Plaintiff's suicide watch was a peaceful protest).[2] Upon arrival at medical, two officers were responsible to watch Plaintiff, which is logged and documented. At around 6-7 a.m., a clinician came and was ordered by custody to be removed for suicide watch as he did not want to babysit in an agitated state. At around 11 a.m., Plaintiff went to mental health to report his behavior. Afterwards, his clinician felt it was necessary to accommodate Plaintiff with therapeutic reading materials. The title was "A Course in Miracles." The clinician printed it online for Plaintiff, and Plaintiff promised to read it.

After the mental health appointment was over, Plaintiff walked alone to his assigned building. An officer opened the door, and Plaintiff then rattled the A-Section door handle. Plaintiff called for a porter, who introduced himself to Plaintiff.

Plaintiff asked for Folgers Coffee to help him wake up and balance out his mood. While coming down the stairs, the tower guard locked the security door and then asked Plaintiff where he lived. Plaintiff told him C-Section, but that Plaintiff could not remember what cell. He gave Plaintiff an ultimatum to dispose of the coffee inside the trash can. Plaintiff refused

---

[2] Plaintiff later appears to allege that it was a suicide hunger strike and that officers laughed at him and teased him for it.

3

and explained "no" was his final answer. Emotionally, Plaintiff felt custody lost hundreds of dollars of his personal property intentionally, and all Plaintiff needed was some good quality coffee.

The officer told Plaintiff to wait there and reached into his pocket for a cellphone. Plaintiff believes that he was consulting with coworkers for additional help. Moments later, aggressive correctional officers showed up. They yelled at the tower guard to "smoke him," then said, "shoot him." Unarmed, Plaintiff looked, and the officer opened the security door.

Correctional officers gave Plaintiff an aggressive directive, shouting "turn around motherfucker, get on your knees and interlock your hands above your head." Plaintiff complied. They aggressively searched Plaintiff and then detained him in hand restraints. They threw Plaintiff's reading material into the trash can.

While being escorted, Plaintiff noticed an old Caucasian male trying to lift his cuffed hands well above his shoulders as Plaintiff looked to get his name. The officer said, "don[']t look at me like that boy look straight." They had their baton sticks out, so Plaintiff decided to look straight.

When they arrived just outside of Receiving and Release they slammed Plaintiff hard against the concrete wall. Plaintiff asked if this was necessary. The old man and several officers began to talk, telling Plaintiff that "you must not know where you are at. Your in Tehachapi 'motherfucker' we don't give a fuck about you here. You say your suicidal then do it." (ECF No. 10, p. 6) (errors in original). Two officers Plaintiff saw while he was on suicide watch were there.

Officer Mayfield and one officer from suicide watch said, "take him in there." It was an empty cell just across from Receiving and Release. They said, "ain[']t no cameras in here motherfucker." They slammed Plaintiff onto his right shoulder and began kicking and punching him while he was in restraints. Plaintiff remembers facing his head towards his right shoulder to prevent them from hitting him in the jaw and knocking him out. They were standing on Plaintiff's ankle and kicking him with boots. Plaintiff was wearing his state provided coat that was thick layered, which probably helped prevent him from breaking a back

rib. The beating lasted for 3-4 minutes.

The beating stopped when Plaintiff stated that he was reporting all of them to the Office of Internal Affairs. They said to uncuff Plaintiff to see if he would fight back. A second watch floor officer from eight block told Plaintiff not to do it, and that it would be way worse the next time. Plaintiff laughed and told the officers to break bones as he is reporting all of them to the Office of Internal Affairs. They asked if Plaintiff wanted to go back to his cell, and Plaintiff said "yes."

Hours later the third watch did count, then told Plaintiff to pack his stuff because, pursuant to a sergeant's order, he was being sent to B-yard.

Staff failed to report the use of force pursuant to policy. They also deprived Plaintiff of an adequate medical evaluation.

Plaintiff consulted with mental health staff and reported level 10 anxiety and trauma. Plaintiff's mental health treatment team reported the allegations.

On March 14, 2019, Plaintiff had a video recorded interview with Lieutenant Davis.

Custody conducted a late medical evaluation. Plaintiff still had a cuff abrasion after eight days.

During a follow-up doctor's appointment, Plaintiff believes he saw Dr. "When." Plaintiff explained that cops beat him and kicked him hard. Plaintiff told the doctor about a strange cracking noise in his lower back, and that he was in excruciating pain. They x-rayed it and discovered that Plaintiff had "Post-traumatic subluxation of the distal coccyx."

Dr. Take reviewed Plaintiff's health factors on March 22, 2019, and October 17, 2019. That is when Plaintiff got the diagnosis for a broken back.

The medical response team failed to report staff misconduct. Medical took one x-ray and got the proof on March 22, 2019. Doctors also failed to treat Plaintiff's condition. Mental health helped Plaintiff report the issue.

California Correctional Institution has a culture of police brutality. After fifty-six days custody gave Plaintiff his property. This resulted in a loss of pending litigation.

The missive Plaintiff conveyed to the Office of Internal Affairs dated March 9, 2019,

was never processed and was returned to Plaintiff.

After Plaintiff's "anxiety mellowed down, the intimidation of further staff retaliation, [Plaintiff] continued to ini[t]iate contact with the 'Office of the Inspector General'…." The Office of the Inspector General determined that no further intervention was warranted by their office.

Determined to not relent, Plaintiff consulted with the Office of the Ombudsman, explaining that custody disposed of a CDCR 1858 Rights and Responsibility Statement. Scott Jacobs made certain the administrative Warden reviewed his grievance.

Plaintiff then decided to reach out to a law firm, but that firm could not represent Plaintiff in any money damages claims, just Coleman v. Newsom. They were determined to get body cameras to support the culture of violence that exists within prison institutions.

The San Quentin Law Office released an obituary graph to verify that more fatalities result from custody killing inmates than homicides from the inmate community.

The California Correctional Institution administration has been in denial of Plaintiff's allegations. They retaliated against Plaintiff by throwing away the CDCR 1958 form. This form was never returned to Plaintiff despite his documented request for a duplicate. The form mentioned defendant Mayfield.

As a result of this dilemma Plaintiff built a world of fear. Plaintiff was afraid police would kill him for litigating against their union. California Correctional Institution is notorious for contracting other inmates to cause or inflict pain and to torment inmates who challenge their administration.

Just because Plaintiff was rehoused on B-yard, Building 3, A-Section did not necessarily mean that Plaintiff was safe. Tracy Siebold, who was Plaintiff's teacher, was caught bringing cell phones. The cops took their first informant's information as uncredible, sent him back to the yard, and he got stabbed.

While Plaintiff was in class, Tracy Siebold singled Plaintiff out with the phone, making the atmosphere hostile for Plaintiff as other inmates felt they now had an obligation to protect their plug/avenue for phone and drug distribution. "The cops gave the inmates that privileged

6

in exchange they turn the entire yard to remove [Plaintiff], expecting a fatal encounter." (ECF No. 10, p. 9) (errors in original).  Inmate Patterson, who was two cells down from Plaintiff, gave Plaintiff the inside heads-up.  His motive was that Plaintiff never incriminated anyone to receive that treatment from the community.

Plaintiff was forced to manufacture two weapons for protection.

During night medication Officer Peña asked a Caucasian nurse if the nurse thought Plaintiff would go out and stab somebody.  The nurse shook her head no.  This was a sign that cops passed Plaintiff subliminal messages.  They next asked Plaintiff if he had information for them.  Plaintiff told them no.  He said, "well we[']re going to see about that."

The next time another Mexican cop passed a message saying, "watch what they do [] out there on the yard the devil is going to bring you down."  Taking her words into account, as she did her round, she stopped by Patterson's cell and said, "watch what they do to him out there on the yard."  Patterson is the shot caller for the Blacks.  He said "who," and she responded "cell 110," referring to Plaintiff's cell.

Patterson told Plaintiff to tell Pierce that Plaintiff has safety concerns.

On Monday, November 11, 2019, Plaintiff wrote a note at breakfast, keeping his information private.  Plaintiff explained to Pierce that he had safety concerns.  Pierce told Plaintiff that this is not the way this works.

Moments after breakfast Plaintiff was searched in the holding cell and then escorted to the Unit Office.  Plaintiff explained that he had safety concerns due to a drug debt.  According to Title 15, if an inmate expresses a threat to his life or safety, custody has to provide them with protective housing.  Plaintiff gave descriptions and names, but they wanted to house him right back into his cell.  Then the Sergeant told Plaintiff that he is next on the list to go, cops already had knowledge that inmates were hired to kill Plaintiff based on Plaintiff suing the cops.  In a desperate attempt, Plaintiff then threw his teacher under the bus.  They laughed as they already knew exactly what was going on.  Plaintiff then incriminated himself by telling the officers he had two knives.

Lieutenant Bell was Mexican, and she sent Plaintiff to administrative segregation.

Plaintiff was then transferred to Kern Valley State Prison.  Plaintiff expressed enemy concerns to Correctional Counselor Telerico, and he submitted an A-12 (or 8-12) confidential enemy form, so Plaintiff never has to return to California Correctional Institution.

Kern Valley State Prison takes nothing into account.  They know Plaintiff is not a documented security threat group STG, yet placed Plaintiff in an STG building.  It is still ongoing.  Once "these guys" figure out where Plaintiff came from and figure him out, Plaintiff will get stabbed.  Nothing has changed.  C-Yard at Kern Valley State Prison would be convenient for safety.  Plaintiff never comes out in fear that cops will have inmates kill Plaintiff.  Plaintiff avoids going to yard for fear of retaliation.  While Plaintiff was in ASU-1, they failed to document this information.  Retaliation is still a factor.  All over a peaceful protest for his personal property at California Correctional Institution.

The CDCR failed to document certain information in order to create havoc with inmates and to sabotage their wellbeing.  Cops still place Plaintiff's life in danger at Kern Valley State Prison.  This all transpired over the fact that Plaintiff wanted to sue custody for breaking his back.

There is documentation in Plaintiff's Central File about safety concerns, yet custody still houses him with STG groups in the hopes they will kill Plaintiff for getting body cameras on the police.  Plaintiff cannot turn to the police for protection.

Plaintiff still has spinal pain and doctors have done nothing to accommodate the pain.  They denied physical therapy, pain medication, surgery, DME medical appliances, and follow-up medical appointments to monitor the diagnosis.  They also failed to report staff misconduct.

Plaintiff's current mental health diagnoses are: anti-social behavior, chronic depression, ADHD, high anxiety levels, and chronic insomnia.

Plaintiff brings a claim for excessive force in violation of the Eighth Amendment,[3] a claim for retaliation in violation of the First Amendment, and a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  The only

---

[3] Plaintiff also appears to be attempting to bring an excessive force claim under the Fourteenth Amendment.  As Plaintiff is a state prisoner, the Court will analyze this claim under the Eighth Amendment.

defendants Plaintiff names in the complaint are Mayfield and Lesina.[4]

## III. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or

---

[4] In his complaint, Plaintiff once again asks the Court to grant summary judgment and to appoint counsel. As the Court previously informed Plaintiff, "[i]f Plaintiff wants these forms of relief, he should file separate motions requesting summary judgment and appointment of counsel. The Court notes that, as no defendant has been served, a motion for summary judgment would be premature at this time." (ECF No. 9, p. 4).

Plaintiff also makes allegations regarding a lack of law library access and argues that it is preventing him from presenting an adequate case, at least in part because he is being prevented from obtaining documents that he wants to present to the Court. The Court notes that Plaintiff does not need to present evidence to support his allegations at this time. However, if Plaintiff believes he is being denied adequate law library access, and that this denial is preventing him from adequately prosecuting this action, Plaintiff may file a separate motion for an order under the All Writs Act.

Finally, Plaintiff asks the Court to issue a summons. This request is DENIED. However, if these findings and recommendations are adopted, the Court will issue a summons and attempt to serve the summons and First Amended Complaint on defendant Mayfield.

omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction

in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Excessive Force in Violation of the Eighth Amendment

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

Plaintiff alleges that defendant Mayfield and an officer from suicide watch said, "take him in there." It was an empty cell just across from Receiving and Release. They said, "ain[']t no cameras in here motherfucker." They slammed Plaintiff onto his right shoulder and began kicking and punching him while he was in restraints. They were standing on Plaintiff's ankle and kicking him with boots. The incident lasted for 3-4 minutes. Additionally, Plaintiff alleges that he was complying with orders before he was assaulted.

Based on the allegations in the First Amended Complaint, the Court finds that Plaintiff's Eighth Amendment excessive force claim against defendant Mayfield should

proceed past screening. As an unidentified officer allegedly used force on Plaintiff during the exact same incident, the Court also finds that this case should proceed against this unidentified officer as well. This Court will refer to the unidentified officer as defendant Doe.

As to the only other named defendant, defendant Lesina, Plaintiff's complaint includes no factual allegations regarding anything that defendant Lesina did or did not do to violate his rights. Accordingly, Plaintiff fails to state an excessive force claim against defendant Lesina.

Based on the foregoing, the Court will recommend that Plaintiff's Eighth Amendment excessive force claim proceed only against defendant Mayfield and defendant Doe.

### C. Retaliation in Violation of the First Amendment

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' Brodheim, 584 F.3d at 1269, that is 'more than minimal,' Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

There are no allegations in the First Amended Complaint suggesting that defendant Mayfield or defendant Lesina retaliated against Plaintiff because Plaintiff engaged in protected

conduct. Accordingly, Plaintiff fails to state a retaliation claim against defendant Mayfield and defendant Lesina.

### D. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

While Plaintiff sufficiently alleges an excessive force claim against defendant Mayfield and defendant Doe, there are no allegations in the complaint suggesting that either of these defendants knew that Plaintiff had a serious medical need after the excessive force incident yet disregarded that need. Accordingly, Plaintiff fails to state a claim against defendant Mayfield and defendant Doe for deliberate indifference to his serious medical needs.

As to the only other named defendant, defendant Lesina, Plaintiff's complaint includes no factual allegations regarding anything that defendant Lesina did or did not do to violate his rights. Accordingly, Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his serious medical needs against defendant Lesina.

While there are no other named defendants, the Court notes that Plaintiff also fails to state a claim against any member of the medical staff because he has not sufficiently alleged that any individual member of the medical staff knew that he had a serious medical need yet disregarded that need.

As to Dr. When, Plaintiff alleges that he saw Dr. When, that he told him or her what happened, that Plaintiff heard a cracking noise in his lower back, and that he was in excruciating pain. "They" x-rayed it and discovered that Plaintiff had "Post-traumatic subluxation of the distal coccyx." Plaintiff provides no other factual allegations regarding Dr. When. Based on the allegations, Plaintiff fails to sufficiently allege that Dr. When was deliberately indifferent to his serious medical needs. It appears that Dr. When ordered an x-ray after seeing Plaintiff, and there is no indication that Plaintiff saw Dr. When after this appointment. Therefore, Plaintiff fails to sufficiently allege that Dr. When knew that Plaintiff had a serious medical need yet intentionally disregarded that need.

As to the other doctor Plaintiff allegedly saw, Dr. Take, Plaintiff alleges that Dr. reviewed Plaintiff's health factors on March 22, 2019, and on October 17, 2019, and this is

when Plaintiff got the diagnosis for a broken back.  However, Plaintiff provides no other factual allegations regarding Dr. Take, such as anything Dr. Take did or said during these or any other appointments.  Accordingly, Plaintiff fails to sufficiently allege that Dr. Take knew that Plaintiff had a serious medical need yet intentionally disregarded that need.

The Court notes that Plaintiff alleges that "Doctors" failed to treat his medical condition, but he does not allege which doctors or provide any additional factual allegations regarding Dr. When or Dr. Take.

### E.  Federal Rules of Civil Procedure 18 and 20

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20.  Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2).  "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." K'napp v. California Dept. of Corrections, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation, 599 Fed. App'x. 791 (9th Cir. 2015) (alteration in original) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) ("Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997)

("[T]he 'same transaction' requirement[] refers to similarity in the factual background of a claim.").

"Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." Washington v. Fresno County Sheriff, 2014 WL 641137, at *2 (E.D. Cal., Feb. 18, 2014); Williams v. Madera Police Dep't, 2012 WL 3068944, at *3 (E.D. Cal., July 26, 2012) (same); Miller v. Kernan, 2017 WL 590259, at *3 (E.D. Cal., Feb. 14, 2017) (same); Solomon v. Carrasco, 2012 WL 3744666, at *3 (E.D. Cal., Aug. 28, 2012) (same).

Plaintiff's First Amended Complaint fails to comply with Federal Rules of Civil Procedure 18 and 20. Despite being informed that he was not being given leave to amend to add unrelated claims (ECF No. 9, p. 8), it appears that Plaintiff is attempting to add unrelated claims. The first group of claims Plaintiff brings revolve around an excessive force incident and the aftermath. Plaintiff then goes on to make numerous allegations regarding inmates wanting to harm him and correctional officers either not protecting him from the danger or soliciting the inmates to harm Plaintiff. Plaintiff alleges that he was transferred, and that this is still ongoing. However, there are no factual allegations connecting these claims to Plaintiff's allegations that defendant Mayfield and another officer used excessive force on him on May 6, 2019, and that he did not receive adequate medical attention afterwards.

At times Plaintiff does appear to attempt to connect the claims by alleging, in a conclusory fashion, that correctional officers failed to protect Plaintiff and/or solicited inmates to harm Plaintiff in retaliation for Plaintiff reporting the excessive force incident on May 6, 2019. However, there are no factual allegations to support Plaintiff's conclusory allegations. Moreover, at times, Plaintiff alleges that the retaliation occurred for different reasons, such as in retaliation for a prior lawsuit that he brought (ECF No. 10, p. 10). Plaintiff also alleges that the inmates wanted to harm him because he had drug debt (not because correctional officers solicited them to do so) (id.). Thus, to the extent Plaintiff is attempting to bring claims based on allegations that inmates want to harm him and that correctional officers either are not

protecting him from the danger or are soliciting the inmates to harm Plaintiff, those claims are unrelated to his claims against defendant Mayfield and defendant Doe and do not belong in this lawsuit.

As Plaintiff was not given permission to add these claims, the Court finds that these unrelated claims should be dismissed without prejudice to Plaintiff bringing them in a separate lawsuit.

### F. Other Claims

Plaintiff only lists two defendants in this action. He also only lists two claims.[5] It is thus unclear if Plaintiff is attempting to bring any other claims against any other defendants. To the extent that he is, the Court finds that Plaintiff's complaint fails to comply with Rule 8(a).

As set forth above, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint is not required to include detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77.

Plaintiff mentions numerous individuals in his complaint (some known and some unknown). However, despite being informed by the Court's prior screening order (ECF No. 9, p. 6) that he could name unknown defendants as Doe Defendants, and despite knowing the name of at least some of the individuals Plaintiff mentions in his complaint, Plaintiff only lists two defendants. None of the other individuals are ever referred to as a defendant. Thus, it is

---

[5] In these two claims mentions excessive force in violation of the Eighth Amendment, retaliation in violation of the First amendment, and deliberate indifference to his medical needs in violation of the Eighth Amendment

not clear which of the other individuals discussed in the complaint, if any, Plaintiff is attempting to bring claims against, or what claims he is attempting to bring against them. Moreover, because Plaintiff discusses numerous unnamed individuals but does not list them as Doe defendants, and because Plaintiff repeatedly uses terms to refer to multiple individuals instead of explaining what each individual defendant did or did not do, at times it is difficult (if not impossible) to determine who did what.

Therefore, as to all of the claims except those discussed in the sections above, Plaintiff's First Amended Complaint fails to comply with Rule 8(a).

### IV. CONCLUSION, RECOMMENDATIONS, AND ORDER

The Court has screened the First Amended Complaint and finds that Plaintiff's Eighth Amendment excessive force claim against defendant Mayfield and defendant Doe should proceed past screening. The Court also finds that all other claims should be dismissed.

The undersigned will not recommend that further leave to amend be granted. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure all of the deficiencies identified in the screening order. Accordingly, the Court finds that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment excessive force claim against defendant Mayfield and defendant Doe; and
2. All other claims be dismissed as discussed in these findings and recommendations.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **September 21, 2021**         /s/ *Erica P. Grosjean*
                                       UNITED STATES MAGISTRATE JUDGE