UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOBARDO ERIC RAMOS,<br><br>        Plaintiff,<br><br>        v.<br><br>MAYFIELD, et al.,<br><br>        Defendants. | Case No. 1:21-cv-01036-ADA-EPG (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL<br><br>(ECF No. 76 & 82)<br><br>ORDER DENYING PLAINTIFF'S MOTIONS FOR SPOLIATION SANCTIONS<br><br>(ECF Nos. 75 & 88) |

Leobardo Ramos ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case is currently proceeding on Plaintiff's Eighth Amendment excessive force claim against defendant Mayfield and defendant Doe based on allegations that they directed Plaintiff to be taken into an empty cell, slammed Plaintiff onto his shoulder, and then repeatedly kicked and punched him.  (ECF Nos. 10, 12, & 21).

On January 9, 2023, Plaintiff filed what appears to be a motion for spoliation sanctions, along with a motion to compel.  (ECF Nos. 75 & 76).[1]  On January 31, 2023, defendant Mayfield ("Defendant") filed an opposition to Plaintiff's motion for spoliation sanctions, which

---

[1] Plaintiff states that this motion to compel is supported by his separately filed memorandum of law. However, the Court did not receive a separate memorandum from Plaintiff on or around January 9, 2023.  While Plaintiff eventually filed a memorandum of law in support of his motion to compel, that memorandum is dated March 21, 2023 (ECF No. 96, p. 10), and was not timely filed.

she construed as a motion to compel.  (ECF No. 81).  On February 10, 2023, Plaintiff filed another motion to compel.  (ECF No. 82).[2]  On February 13, 2023, Defendant filed her opposition to the motion to compel filed on January 9, 2023, as well as the motion to compel filed on February 10, 2023.  (ECF No. 84).  On February 24, 2023, Plaintiff filed a renewed motion for spoliation sanctions.  (ECF No. 88).  On March 17, 2023, Defendant filed her opposition to the motion for spoliation sanctions (ECF No. 93) and lodged a video disc in support of her opposition (see ECF No. 94).  On March 27, 2023, Plaintiff filed a memorandum of law in support of his motion to compel.  (ECF No. 96).

These motions to compel and motions for spoliation sanctions are now before the Court. For the reasons that follow, the Court will deny Plaintiff's motions to compel and motions for spoliation sanctions.

## I.   TIMELINESS OF FILINGS

Several of the filings are untimely.  The motion to compel deadline was January 13, 2023.  (ECF No. 57).  Accordingly, Plaintiff's second motion to compel, which is dated January 26, 2023 (ECF No. 82, p. 2), was filed approximately two weeks after the motion to compel deadline.  Additionally, Defendant's opposition to Plaintiff's first motion to compel was filed on February 13, 2013 (ECF No. 84), which was approximately two weeks after her deadline to respond to the first motion compel.  That said, these filings were only approximately two weeks late, and as the Court sees no prejudice in considering these filings, the Court will consider these filings.

However, Plaintiff's memorandum in support of his motion to compel is dated March 21, 2023 (ECF No. 96, p. 10).  This filing was made over two months after the motion to compel deadline, and over a month after Defendant filed her oppositions to the motions to compel.  Given this, the Court will not consider Plaintiff's untimely memorandum.[3]

---

[2] To the extent Plaintiff's motion also includes a request to depose defendant Mayfield, the Court notes that it has already addressed this request (See ECF No. 85), and Plaintiff did not cure the deficiencies identified by the Court.

[3] The Court notes that much of Plaintiff's memorandum is dedicated to his desire to take depositions. The Court has already addressed Plaintiff's requests to take depositions (see ECF Nos. 63, 80, & 85), and Plaintiff has once again failed to make the required showing.

## II.    ANALYSIS OF MOTIONS TO COMPEL

At issue in Plaintiff's motions to compel[4] are: 1): Defendant's response to Interrogatory No. 3; 2) Defendant's response to Interrogatory No. 5; 3) Defendant's response to Interrogatory No. 6; 4) Defendant's response to Interrogatory No. 7; 5) Defendant's response to Interrogatory No. 8; 6) Defendant's response to Interrogatory No. 9; 7) Defendant's response to Interrogatory No. 10; 8) Defendant's response to Interrogatory No. 11;  9) Defendant's response to Interrogatory No. 12; and 10) Defendant's response to Interrogatory No. 13.[5]

### a.    Defendant's Response to Interrogatory No. 3

In Interrogatory No. 3, Plaintiff asked Defendant: "According to my video interview I mentioned I could identify at least 3 staff.  One involved officer worked in building 8 hispanic male name starts with an 'E' could you review your case log/work log and provide second watch officers name.  Also another involved officer was on my suicide watch could you look at the work log and provide his name?  Specifically these 3 people were involved."  (ECF No. 84, p. 15) (errors in original).

Defendant responded: "Objection.  The interrogatory is vague and ambiguous and compound.  Without waiving these objections, the responding party does not maintain a case log or work log.  The responding party lacks information concerning correctional staff who were working outside the clinic.  Without further clarification, the responding party is unable to respond to the interrogatory."  (ECF No. 84, p. 21).

Plaintiff argues that this interrogatory is relevant, and that Defendant failed to answer.

Setting aside form objections, however, Defendant did provide an answer, that is, she does not maintain a case or work log and lacks information concerning staff who worked outside the clinic.  See, e.g., Scott v. Palmer, 2014 WL 6685810, at *3 (E.D. Cal. Nov. 26,

---

[4] While Plaintiff filed two separate motions to compel, the interrogatories at issue in both motions largely overlap.  (Compare ECF No. 76 with ECF No. 82).

[5] In his first motion to compel, Plaintiff also argues that defendant Mayfield failed to sign the interrogatory responses under oath, as required by the Federal Rules of Civil Procedure.  (ECF No. 76, p. 3).  Plaintiff is incorrect.  Defendant Mayfield provided a verification, under oath, "that the responses are true and correct of my own knowledge, or on the basis of information available to me, and I believe all responses based on such information to be true."  (ECF No. 84, p. 26).

2014) ("While Plaintiff may be disinclined to trust Defendants' discovery responses, he is in a position no different than any other civil litigant: in the absence of legal or fact-based substantive deficiencies, he is required to accept the responses provided."); Tran v. Young, 2020 WL 91970, at *3 (E.D. Cal. Jan. 8, 2020) (same).

Accordingly, the Court will deny Plaintiff's motions as to this request.[6]

### b. Defendant's Response to Interrogatory No. 5

In Interrogatory No. 5, Plaintiff asked Defendant: "From your position being 10 feet away from the incident that transpired on March /06/ 2019 11:35 AM could you identify any staff that participated in beating me? You mention you didn't abbanddon your post well do you know who was involved?" (ECF No. 84, p. 15) (errors in original).

Defendant responded: "Objection. The interrogatory assumes facts in dispute, is argumentative, and is compound. Without waiving any objections, the responding party is unaware of any correctional staff who beat the Plaintiff on March 6, 2019, and did not observe this occur." (Id. at 22).

Again, Defendant fully responded to this request. See, e.g., Scott, 2014 WL 6685810, at *3 ("While Plaintiff may be disinclined to trust Defendants' discovery responses, he is in a position no different than any other civil litigant: in the absence of legal or fact-based substantive deficiencies, he is required to accept the responses provided."); Tran, 2020 WL 91970, at *3 (same). Accordingly, the Court will deny Plaintiff's motion to compel as to this request.

### c. Defendant's Response to Interrogatory No. 6

In Interrogatory No. 6, Plaintiff asked Defendant: "About 20 officers were involved I could remember just 3 isnt it your job description to respond to emergency calls on your radio when a code is called? Especially when it's ten feet within proximity of your post!" (ECF No.

---

[6] The Court also notes that the Court required the parties to exchange certain relevant documents (ECF No. 56), including the California Correctional Institution ("CCI") Facility A Sign-In/Sign-Out Sheet, dated March 6, 2019 (a copy of which Defendant attached to her opposition (ECF No. 84, pgs. 33-48)), as well as witness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint.

84, p. 15) (errors in original).

Defendant responded: "Objection.  The interrogatory assumes facts in dispute, is argumentative, and is compound.  Without waiving this objection, the responding party states that she is responsible to respond only to alarms inside the clinic."  (Id. at 22).

Plaintiff argues that Defendant failed to answer, and that this question is critical to his "defense."

Defendant fully responded to this request as well.  Accordingly, the Court will deny Plaintiff's motions to compel as to this request.

### d.  Defendant's Response to Interrogatory No. 7

In Interrogatory No. 7, Plaintiff asked Defendant: "How long have you been a correctional officer?  Have you ever been written up for misconduct?"  (ECF No. 84, p. 15).

Defendant responded: "Objection.  The interrogatory is compound, is overbroad as to time and scope, is not relevant to the claims and defenses in this case, and violates the responding party's privacy.  The interrogatory is vague and ambiguous as to the term 'written up.'  Without waiving these objections, the responding party states: the responding party has never been disciplined for misconduct involving the Plaintiff or another inmate.  The responding party has been a correctional officer for twenty-three years."  (Id. at 22-23).

Plaintiff argues that this interrogatory gives clarity on how long Defendant has been a correctional officer.  Additionally, Plaintiff argues that it is critical for him to know if there is a pattern of negative history.

Because Defendant provided answers to both questions posed by Plaintiff, the Court will deny Plaintiff's motions to compel as to this request.

### e.  Defendant's Response to Interrogatory No. 8

In Interrogatory No. 8, Plaintiff asked Defendant: "Shortly after the beating on me did you notice any medical support offered by custody?"  (ECF No. 84, p. 16).

Defendant responded: "Objection.  The interrogatory assumes facts in dispute and is argumentative.  Without waiving any objections, the responding party states: the responding party is unaware of any correctional staff who beat the Plaintiff on March 6, 2019, and did not

observe this occur.  The responding party is unaware that the Plaintiff required additional medical care after the Plaintiff left the clinic on that date." (Id. at 23).

Plaintiff appears to argue that Defendant failed to answer the question to the best of her ability, and that her answer is prejudicial to Plaintiff.  Additionally, Plaintiff argues that this interrogatory is important to show that staff failed to offer medical support after the excessive force incident.

Defendant fully responded to this request.  Accordingly, the Court will deny Plaintiff's motions to compel as to this request.

f.   Defendant's Response to Interrogatory No. 9

In Interrogatory No. 9, Plaintiff asked Defendant: "What did I say to trigger officers to beat me having knowledge they were breaking the law.  Do you know what exchange of words were between I and custody?"  (ECF No. 84, p. 16) (errors in original).

Defendant responded: "Objection.  The interrogatory assumes facts in dispute, is argumentative, and is compound.  Without waiving any objections, the responding party states: the responding party is unaware of any correctional staff who beat the Plaintiff on March 6, 2019, and did not observe this occur.  The responding party did not have any further encounters with Plaintiff on March 6, 2019 after Plaintiff left the clinic on that date and did not hear any statements made by him." (Id. at 23).

Plaintiff argues that Defendant was present during the excessive force incident, so should be able to answer this interrogatory.

Defendant fully responded to this request.  Accordingly, the Court will deny Plaintiff's motions to compel as to this request.

g.   Defendant's Response to Interrogatory No. 10

In Interrogatory No. 10, Plaintiff asked Defendant: "How many times was I striked by custody while being cuffed behind my back slamed on the floor.  How many times did you strike me Mayfield?"  (ECF No. 84, p. 16) (errors in original).

Defendant responded: "Objection.  The interrogatory assumes facts in dispute, is argumentative, and is compound.  Without waiving any objections, the responding party states:

the responding party is unaware of any correctional staff who beat the Plaintiff on March 6, 2019, and did not observe this occur.  The responding party did not strike the Plaintiff."  (Id. at 23-24).

Plaintiff appears to argue that Defendant should have admitted that she and her coworkers struck Plaintiff.

The dispute here is nearly identical to the dispute regarding Defendant's response to Interrogatory No. 9, and for the reasons described in the section on Defendant's response to Interrogatory No. 9, the Court will deny Plaintiff's motions to compel as to Interrogatory No. 10.

h.   Defendant's Response to Interrogatory No. 11

In Interrogatory No. 11, Plaintiff asked Defendant: "Did it appear I was resisting arrest on March /06/ 2019 11:35 AM?  Was I beligerent?  While I was in restraints!"  (ECF No. 84, p. 16) (errors in original).

Defendant responded: "Objection.  The interrogatory assumes facts in dispute, is argumentative, and is compound.  Without waiving any objections, the responding party is unaware of any correctional staff who beat the Plaintiff on March 6, 2019, and did not observe this occur.  The responding party did not have any further encounters with Plaintiff on March 6, 2019 after Plaintiff left the clinic on that date.  The responding party did not observe Plaintiff resisting arrest on March 6, 2019."  (Id. at 24).

Plaintiff argues that Defendant failed to describe Plaintiff's actions, and that she is playing a "role" as she states that she had no knowledge of the incident.

The dispute here is nearly identical to the dispute regarding Defendant's response to Interrogatory No. 9, and for the reasons described in the section on Defendant's response to Interrogatory No. 9, the Court will deny Plaintiff's motions to compel as to Interrogatory No. 11.

i.   Defendant's Response to Interrogatory No. 12

In Interrogatory No. 12, Plaintiff asked Defendant: "In your opinion does CCI State Prison staff have a reputation to violence on inmates whom protest?  How many times has your

7

administration been under investigation due to staff having a culture or violence? Did the O.O.I.A. investigat the A-yard and detain custody set to be apart of Green Wall?  This is critical for the courts to note."  (ECF No. 84, p. 16) (errors in original).

Defendant responded: "Objection.  The interrogatory is compound and calls for an improper lay opinion.  The interrogatory also calls for information which is not relevant to the claims and defenses in this action.  Without waiving this objection, the responding party has made a reasonable inquiry but is unaware of an investigation concerning this alleged incident by the Office of Internal Affairs.  The responding party was not interviewed by the Office of Internal Affairs concerning Plaintiff's allegations."  (Id. at 24).

Plaintiff argues that an answer to this interrogatory is critical as the prison has a "huge" history of violence towards inmates, has been under investigation, and federal agents have escorted correctional officers off the yard.  Plaintiff wants Defendant to describe her coworkers' reputation based on her observations.  Defendant could admit to Green Wall gang activity, and this action revolves around Defendant being involved in such activity.

Defendant's objection regarding relevance is well taken.  Plaintiff does not adequately explain how a history of violence by staff at CCI is relevant to the claim that defendant Doe and defendant Mayfield used force on Plaintiff on the day of the incident.  And, the claim that is proceeding does not involve supervisory liability or liability based on policy.  Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections.") (citation omitted).  Moreover, in her opposition, Defendant points out that, "[a]s a Medical Clinic Officer, [she] does not have an 'administration' which could be investigated." (ECF No. 81, p. 4).[7]  Finally, despite the well-founded objections, Defendant still answered the interrogatory in part.  Accordingly, the Court will deny Plaintiff's motions as to this request.

---

[7] Plaintiff refers to Defendant as a correctional officer (ECF No. 10, p. 4), but in either event, there is nothing before the Court suggesting that she has an "administration" that could be investigated.

8

j.   Defendant's Response to Interrogatory No. 13

In Interrogatory No. 13, Plaintiff asked Defendant: "CCI has an excessive amount of excessive force complaints, have you ever been written up for this type of claim?"  (ECF No. 84, p. 16).

Defendant responded: "Objection.  The interrogatory assumes facts in dispute, is argumentative, and is compound.  The interrogatory is vague and ambiguous as to the term 'written up.'  Without waiving any objections, the responding party has not been disciplined for using excessive force on an inmate."  (Id. at 25).

Plaintiff argues that defendant Mayfield failed to answer this interrogatory.  The purpose of this interrogatory is to find evidence of a negative pattern by Defendant.  Plaintiff believes it is critical to know Defendant's history, especially if there are other cases similar to his.

Defendant answered the interrogatory.  Accordingly, the Court will deny Plaintiff's motions to compel as to this request.

## III.   MOTIONS FOR SPOLIATION SANCTIONS

In addition to filing two motions to compel, Plaintiff filed two motions for spoliation Sanctions (ECF Nos. 75 & 88).  The Court addresses Plaintiff's motions for spoliation sanctions below.

a.   Plaintiff's Motions

On January 9, 2023, Plaintiff filed a motion for spoliation sanctions.  (ECF No. 75).[8] On February 24, 2023, Plaintiff filed a renewed motion for spoliation sanctions.  (ECF No. 88).

Plaintiff argues that Defendant failed to properly respond to his interrogatories, and in doing so, has violated the law.  By objecting to relevant questions, Defendant is concealing evidence that is critical to Plaintiff's case.

Defendant had a duty to preserve evidence.

---

[8] Plaintiff also requests a video conference so the parties can negotiate.  (ECF No. 75, p. 4).  As the Court is denying Plaintiff's motions to compel and Plaintiff's motions for spoliation sanctions there is no need for a conference.  Therefore, this request is DENIED.

Plaintiff lists numerous pieces of evidence that he argues were not preserved, including a letter he wrote to internal affairs, a video interview of Plaintiff regarding his allegations of excessive force, medical records regarding a back injury, and a California Department of Corrections and Rehabilitation ("CDCR") 1858 Form.  Additionally, "custody" altered his 602 and 1858 Forms, and "Defendants" put a false statement on his medical evaluation and on a 128 Chrono.

Plaintiff also argues that Defendant failed to look at the staff work log to identify the two officers that supervised him on March 6, 2019, while he was on suicide watch.  The Court ordered Defendant to provide the names of the responsible parties, but she failed to comply.

Plaintiff also argues that Defendant was specifically asked to send a copy of the worklog from building 8 A-Yard, second watch.  However, she tried to confuse Plaintiff by sending an additional work log from a random building, and not the requested log, in the hopes that Plaintiff would select the wrong names.  Plaintiff cannot understand the work log and cannot trace where each officer works.  That is why Plaintiff specifically asked for the log for just one building.

Defendant's conduct shows willfulness, bad faith, or fault.  Additionally, the spoliation of the Attorney General/California Department of Corrections and Rehabilitation may be imputed to Defendant.

Plaintiff also argues his motion should be granted because Defendant failed to file an opposition.[9]

Plaintiff asks for numerous forms of relief, including sanctions in the amount of $500,000 and that Defendant's future motion to dismiss be denied.

b.    Defendant's Oppositions

On January 31, 2023, Defendant filed an opposition to Plaintiff's first motion for spoliation sanctions.  (ECF No. 81).  On March 17, 2023, Defendant filed an opposition to Plaintiff's renewed motion for spoliation sanctions.  (ECF No. 88).

---

[9] Plaintiff is incorrect.  Defendant filed an opposition to both motions for spoliation sanctions.  (ECF Nos. 81 & 93).

Defendant argues that Plaintiff's motions should be denied.

As to Plaintiff's allegations regarding a work log identifying the two officers who supervised Plaintiff on suicide watch, "[b]oth in her discovery responses, and in her declaration, Defendant Mayfield asserts that there is no documentation identifying the custody officers who observed Plaintiff at that time." (Id. at 2). Defendant also notes that "if Plaintiff was observed in the medical clinic by custody staff while in a holding cell, a holding cell log may have been prepared." However, the litigation coordinator conducted a search for the relevant holding cell log, but no log was found. (Id.). Defendant also asserts that "CCI does not generate documentation identifying the names of correctional staff who escort inmates to the medical clinic, as this task is assigned to those officers who are available to complete the task at the time of the appointment, rather than being formally assigned for the escort beforehand." (Id. at 3). Accordingly, there is no documentation regarding the names of staff who escorted Plaintiff to the clinic on March 6, 2019.

"Since Defendant has conducted a good faith effort to locate documentation requested by Plaintiff concerning the names of staff members who escorted him to the medical clinic on March 6, 2019, and who observed him at the clinic, she has fully complied with the discovery requests and sanctions are inappropriate." (Id.).

Defendant also argues that Plaintiff did not place Defendant or the California Department of Corrections and Rehabilitation on notice that he was going to bring a claim against the staff who escorted him to the clinic, or against staff who observed him at the clinic, until after Plaintiff filed this lawsuit. Plaintiff did not mention these staff members in his 602, the letter he sent to the Office of Internal Affairs, his video interview, or in his original complaint. It was not until he filed his amended complaint on August 30, 2021, that he first mentioned the staff who observed him in the medical clinic, and the amended complaint was not served until January 25, 2022. "Document preservation letters were sent to CDCR on February 24, 2022. Consequently, neither Defendant nor CDCR were on notice that they needed to conduct any inquiry or investigation into the identity of the officers observing Plaintiff until that time." (ECF No. 93, p. 4) (citation omitted). "Additionally, Plaintiff did not

allege that the officer who escorted him to the medical clinic was involved in the alleged

incident until he filed a motion to substitute parties on January 13, 2023." (Id.).

"Since Defendant and CDCR were not on notice that information concerning the

identities of the staff members who escorted or observed Plaintiff was relevant to this claim

until after this litigation commenced, they have not unreasonably failed to either investigate the

staff members' identifies or preserve relevant documentation concerning their involvement."

(Id. at 5).

Finally, Defendant argues that "there is no evidence either that Defendant Mayfield was

ever in possession or control of documentation responsive to Plaintiff's requests or that she

destroyed this documentation in bad faith."

c.   Legal Standards

"Spoliation is an evidentiary doctrine under which a district court can, in its discretion,

sanction a party that destroys evidence, if the party is on notice that the evidence is potentially

relevant to pending litigation." Leeson v. Transamerica Disability Income Plan, 279 F. App'x

563, 565 (9th Cir. 2008). "A party seeking spoliation sanctions 'must establish (1) that the

party having control over the evidence had an obligation to preserve it at the time it was

destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the

destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of

fact could find that it would support that claim or defense.'" Scalia v. County of Kern, 576 F.

Supp. 3d 703, 711 (E.D. Cal. 2021) (quoting In re Napster, Inc. Copyright Litig., 462 F. Supp.

2d 1060, 1078 (N.D. Cal. 2006)); Washington v. Stark, 2019 WL 316864, at *2 (E.D. Cal. Jan.

24, 2019) (same).

d.   Analysis

Plaintiff's motions for spoliation sanctions will be denied. Plaintiff did not submit any

evidence in support of his motions. No exhibits or declarations are attached to Plaintiff's

motions, and his motions are not signed under penalty of perjury.[10] There is no evidence before

_____

[10] The Court notes that in his first motion for spoliation sanctions, he states that the motion was submitted
"without perjury." (ECF No. 75, p. 4). Even if Plaintiff meant under penalty of perjury, this motion dealt with

the Court suggesting that Defendant, the CDCR, or defense counsel had an obligation to preserve evidence at the time it was destroyed or that evidence was destroyed with a culpable state of mind.  There is also no evidence that they engaged in bad faith conduct.

Additionally, at least part of Plaintiff's request for sanctions involves allegations that Defendant failed to properly respond to Plaintiff's interrogatories.  However, as discussed in detail above, Plaintiff's motions to compel are being denied in their entirety because Defendant properly objected and/or responded to all the requests at issue.  As Defendant properly responded, Plaintiff is not entitled to sanctions based on his allegations that she did not properly respond.

Further, Defendant submitted evidence that she has acted in good faith.  She explains that searches that were conducted for various logs, and that no documents were found.  She also submits evidence that she complied with this Court's order to respond to Plaintiff's discovery requests and provided Plaintiff with relevant work logs.  While Plaintiff is unhappy with the response, Plaintiff does not adequately explain why these logs are deficient.  Moreover, the logs appear to be for Facility A, first watch and second watch (ECF No. 93, pgs. 14-24), which are responsive to Plaintiff's discovery requests (See ECF No. 93, p. 11).  There is no indication on the logs that they only list officers who worked in building 8, but the logs list the names of the officers, a description of the officers' posts, the officers' ranks, the time the officers started their shift, and the time the officers ended their shift.[11]  There is no evidence before the Court suggesting that Defendant tried to confuse Plaintiff by providing the work log for all of Facility A instead of just building 8.[12]  There is also no evidence before the Court that a work log just for building 8 exists.

---

Defendant's responses to certain interrogatories, and as discussed in this order, Defendant properly objected and/or responded to Plaintiff's interrogatory requests.

[11] One log, which lists "non-budgeted posts," does not include the employees rank or a description of the post, but it still include the name of the employee, as well as the start time and end time for their shifts.  (ECF No. 93 p. 16).

[12] The Court notes that Defendant did provide a work log from "culinary," as well as the work log from third watch.  (ECF No. 93, pgs. 23 & 25-29).  However, even assuming that these logs were not responsive to Plaintiff's requests, the logs appear to be from the correct facility, they are clearly labeled, and they only total six pages.  There is no indication that Defendant provided extra logs in order to confuse Plaintiff.

While Plaintiff argues that Defendant acted in bad faith because she was directed to provide the name of the responsible parties and not just the work logs, Plaintiff is incorrect. The Court never made such an order.

Finally, Defendant submits copies of at least some of the evidence that Plaintiff alleges was not preserved, including a letter to the Office of Internal Affairs (ECF No. 93, pgs. 55-57) and the video interview of Plaintiff (see ECF No. 94). The Court notes that Plaintiff did not submit any evidence suggesting that Defendant refused to provide these records in response to a discovery request from Plaintiff.[13]

Based on the foregoing, the Court will deny Plaintiff's motions for spoliation sanctions.

**IV.    ORDER**

Based on the foregoing, IT IS ORDERED that:

1.   Plaintiff's motions to compel (ECF Nos. 76 & 82) are DENIED; and

2.   Plaintiff's motions for spoliation sanctions (ECF Nos. 75 & 88) are DENIED.

IT IS SO ORDERED.

Dated:   __**April 24, 2023**__                      _/s/ Erica P. Grosjean_
                                                    UNITED STATES MAGISTRATE JUDGE

---

[13] The Court already directed Defendant to provide a copy of this video interview to Plaintiff, or, if Plaintiff is not allowed to possess or play the video, to coordinate with staff at Plaintiff's institution of confinement to ensure that Plaintiff is able to view the video. (ECF No. 56).